UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
———————————

SHIRLEY DEVRIES,

             Plaintiff,

Case No. 1:05-cv-684

v.

Hon. Richard Alan Enslen

BIOLIFE PLASMA SERVICES, L.P.,

             Defendant.

**OPINION**

_____/

There are some things in this life of which a blissful ignorance would be better for both judges and non-judges alike.  Witness the example of a plasma nurse, whose job it was to examine the vital organs of plasma donors to insure those donors were not contaminating the nation's plasma supply, who, when fired for not doing those physical examinations, admits the neglect, and without hint of irony, claims as her defense that some of her coworkers were permitted a similar neglect of duty.  If this is a defense, then Emperor Nero please strike up a tune so Rome can burn and disease and pestilence can follow.

**INTRODUCTION**

This matter is before the Court to consider two related motions: (1) Defendant BioLife Plasma Services, L.P.'s Motion to Strike Affidavit of Jeffrey Audritish; and (2) Defendant's Motion for Summary Judgment.  Oral argument is unnecessary in light of the briefing.  The first Motion will be granted in part and denied in part, while the second Motion will be granted.

**MOTION TO STRIKE AFFIDAVIT**

Since the summary judgment motion requires the Court to consider the underlying record, the Court must first determine the Motion to Strike Affidavit to determine the content of the summary judgment record.

Plaintiff Shirley DeVries, in her Complaint, seeks judgment against Defendant for violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and particularly 29 U.S.C. § 2615, which subsection prohibits discrimination for the exercise of FMLA rights and interference with the exercise of FMLA rights. (See Compl. ¶¶ 16-19.) Jeffrey Auditrish's Affidavit concerns in part the scheduling of plasma donor appointments with Medical Historian Supervisors, the length of those appointments, and company policy about the length of those appointments. (Auditrish Aff. ¶¶ 16–22.)  Defendant's Motion to Strike Affidavit seeks an order striking those paragraphs.

Defendant's Motion relies on separate rationales for the various paragraphs of the Affidavit. As to paragraph 20 of the Affidavit, Defendant asked that the paragraph be stricken, because it constitutes inadmissible expert witness testimony.  As to paragraphs 17 to 19, Defendant asked that the paragraphs be stricken, because they are outside of the affiant's personal knowledge.  Also, as to paragraphs 17 to 19 and 22, Defendant asked that the paragraphs be stricken as relying on inadmissible hearsay.

To begin with the expert witness argument, paragraph 20 relates to the Standard Operating Procedure ("SOP") of Defendant to physically examine prospective plasma donors.  The paragraph contains Auditrsh's opinion that the physical examination required by the SOP takes longer than 12 or 15 minutes to perform.  The issue as to this testimony is whether it is expert testimony within the meaning of Federal Rule of Evidence 702, or permissible lay witness testimony within the meaning

2

of Federal Rule of Evidence 701.  Upon review of such testimony, the Court concludes that this is a proper lay witness opinion based on the witness's perceptions, and this opinion might aid a jury in understanding the witness's testimony.  In particular, Audritish was employed as a Quality Assurance Representative during the relevant time period; he was familiar with the SOP and observed not less than 20 physical examinations by medical supervisors.  Therefore, the testimony is proper and permitted under Rule 701.  *See Brady v. Chem. Constr. Corp.*, 740 F.2d 195, 201 (2d Cir. 1984); *United States v. McCullah*, 745 F.2d 350, 352 (6th Cir. 1984).  As such, the objection to such testimony is overruled.

While Audritsh's above lay opinion is proper, his testimony concerning Shauna Fox and Jeannie Corl is not permissible.  Federal Rule of Civil Procedure 56(e) has been interpreted by the federal courts as limiting the use of inadmissible evidence contained within affidavits during summary judgment practice.   Under the Rule, affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  Affidavits which do not comply with Rule 56 (e) "must be disregarded."  *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993).  This restriction includes affidavits based on hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir. 1999), as well as statements not based on personal knowledge, *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) (citing *Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir. 1986)); *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 458-59 (6th Cir. 2004).

In Plaintiff's responsive Memorandum, it is argued that statements about the workplace violations by Fox and Corl (which were somewhat similar to DeVries' violation) should not be stricken because the information was taken from workplace records and is not disputed. This argument, however, makes Defendant's point. The information is not based on Audritsh's personal knowledge, but otherwise constitutes inadmissible hearsay. This affidavit cannot be used to buttress other evidence on points as to which the affiant lacks personal knowledge. Therefore, these paragraphs 17 to 19 and 22 will be stricken.

## FACTUAL BACKGROUND

This suit was filed on October 3, 2005, alleging violation of FMLA. According to the allegations of the Complaint, Plaintiff was employed by Defendant as a Licensed Practical Nurse between July 20, 1999 and July 7, 2005. (Comp. ¶ 6.) In February 2005, Plaintiff notified Defendant of her request for FMLA leave for the purpose of joint replacement surgery. (*Id.* at ¶ 9.) The request was approved and Plaintiff was scheduled for leave between July 25, 2005 and September 9, 2005. (*Id.* at ¶ 10.) Prior to the leave, Defendant terminated Plaintiff on July 7, 2005. (*Id.* at ¶ 12.)

To understand the termination, one must understand both Defendant's business and Plaintiff's job in that business. Defendant is in the business of collecting and selling human plasma, which is processed and sold to hospitals and medical organizations to administer life-saving therapies, including those to treat hemophilia, immune system deficiencies, traumatic injury, shock and severe burns. (Frei Decl. ¶ 3.) The main danger of this business is that certain deadly diseases, such as HIV and hepatitis C, may be communicated through plasma to a recipient. (*Id.* at ¶ 4.) For this reason, Defendant's business is licensed and must comply with requirements of the Food and

4

Drug Administration, among others. (Devries Dep. 58.) Also for this reason, Defendant has established various SOPs governing the collection and processing of plasma. (*Id.*) These SOPs help to ensure that plasma collected is suitable for distribution.

Plaintiff was employed as a Medical Supervisor at Defendant's Kentwood facility. (*Id.* at 32, 37.) Defendant also employs a Medical Historian, whose job it is to perform an initial screening of a doner, which includes running certain blood tests and asking the potential donor a series of questions to ensure that the donor is not disqualified. (Bushard Dep. 7-8.) After the initial screen, the Medical Supervisor performs a physical examination, obtains additional medical history, and reviews consent forms. (Frei Dep. 13; Devries Dep. 33.) This procedure is used for both first-time donors and repeat donors at scheduled intervals.[1] (Fox Dep 10–11.) The screening procedure is not the only safety procedure used by Defendant, who among other things does laboratory testing of all new donors for HIV, syphilis, hepatitis, and opiate-based drugs. (Audritsh Aff. ¶ 11.)

This brings us to July 7, 2005, a none too pleasant day for Plaintiff because the donors she was to see were stacking up (because Defendant had over scheduled them) and were becoming agitated. Plaintiff decided to speed up the process by not obtaining a complete medical history (*i.e.*, answering questions for the donor which had not been asked) and not performing a complete hands-on physical examination of a donor, including the liver and spleen palpitation meant to check for

---

[1]The intervals are once a year for a regular donor and, if the donor has not donated in the past six months, at the time of the donation. (Fox Dep. 10-11.)

infection; and, she falsely certified on the donor's form that she had done so.[2]   (DeVries Dep. 97-99;
Def.'s Exs. G & I.)

Plaintiff's indiscretion was brought to the attention of Defendant by Mindy Buchard, a
Medical Historian working at the Kentwood facility.  Buchard reported the incident to Defendant's
Center Manager, Cristin Frei.  (Buchard Dep. 9-13.)  Frei requested that Buchard question the donor,
and the donor confirmed that the physical examination had not occurred and many of the questions
on the form had not been asked.  (*Id.* at 13.)  Following this, Frei and the Assistant Center Manager,
John Terwilliger, again interviewed the donor and received the same information.  (Frei Dep. 21;
Terwilliger Dep. 30–32.)  Frei and Terwilliger then spoke with the Regional Manager, Brian
Rosenau, who advised them to question DeVries about the incident. (Frei Dep. 22.)   When
questioned about the incident, DeVries admitted the wrongdoing, both orally and in writing.
(DeVries Dep. 93–110; Def.'s Ex. G.)

After this, Frei and Terwilliger told Rosenau that DeVries had confirmed the donor's
account, and Rosenau recommended that DeVries be terminated.  (Frei Dep. 24.)  Frei and
Terwilliger then presented DeVries with a written termination notice.  (Frei Dep. 24; DeVries Dep.
96-97).  To safeguard the plasma supply, Defendant then audited DeVries' past work and discovered
that DeVries had taken "shortcuts" on other occasions. (Frei Dep. 36-40.)  As a consequence of the
audit and DeVries' falsification, Defendant was forced to re-perform a physical examination on

---

[2] It is argued in the briefing that Plaintiff believed that this donor qualified for donation
without the exam.  This explanation, however, does not explain the use of a form indicating that
a physical exam was performed, nor does it do anything to justify a false certification.  The
argument also overlooks the potential of a false certification to disrupt the proper timing of
future donor physical exams under Defendant's policies.

every repeat donor who had received their physical examination from DeVries within the past year. (Frei Dep. 37.)

DeVries explains the termination as a pretext to fire her given that management was unprepared to accommodate her FMLA leave. She says that prior to her discharge she brought a schedule to Frei of her days off and Frei commented, "this is not going to work." (DeVries Dep. 164.) Plaintiff also points to two other employees who received lesser discipline. Medical Supervisor Shauna Fox was disciplined on March 31, 2005, for performing an abbreviated medical history–*i.e.*, the examination was brief and instead of giving a verbal explanation of forms she played an audio cassette explaining the forms. (Pl.'s Ex. 8; Fox Dep. 18.) Ms. Fox received only a verbal instruction to do her job per policy in connection with the incident. (*Id.*) Also, the same day, Medical Supervisor Jeanne Corl received only a verbal instruction to do to her job per policy as discipline for performing an abbreviated examination and obtaining an abbreviated medical history in connection with an examination.[3] (Pl.'s Ex. 9.) Neither event involved a failure by the nurse to perform a liver and spleen palpitation to check for infection.

### SUMMARY JUDGMENT STANDARDS

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be

---

[3]Corl had also been counseled earlier regarding other paperwork and workplace failures, which did not involve a failure to perform a liver and spleen palpitation. (Pl.'s Exs. 10-12.)

granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

**1. FMLA Overview**

FMLA essentially provides two theories of recovery: (1) an interference theory arising from 29 U.S.C. § 2615(a)(1) and (2); and (2) a discrimination theory arising from 29 U.S.C. § 2615(2). *Killian v. Yorozu Auto. Tenn., Inc*., 454 F.3d 549, 555-56 (6th Cir. 2006) (citing *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004)). In this case, the record and the pleadings are directed toward proving a FMLA discrimination claim.

In order to establish a *prima facie* FMLA discrimination claim, the plaintiff must establish four elements: (1) she was engaged in an activity protected by FMLA; (2) the employer knew that

she was exercising her rights under FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir. 2003).

If a *prima facie* claim is proven, the Court must further apply "the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 . . . (1973), to retaliation claims under . . . FMLA." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). That is, once the *prima facie* claim is proven, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for discharge. If such a reason is articulated, then the plaintiff has the burden of showing that the articulated reason is a pretext for discrimination. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Pretext may be shown if: (1) the proffered reason had no basis in fact; (2) the proffered reason was insufficient motivation for the employment action; or (3) the proffered action did not actually motivate the employment action. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

**2. Legal Analysis**

Assuming for the minute that Plaintiff has made a *prima facie* case due to the temporal proximity between the requested leave and the termination, this record is nevertheless insufficient to prove pretext in light of Defendant's legitimate articulated reason for termination. First of all, the legitimate nondiscriminatory reason for discharge is admitted by the Plaintiff, both in the briefing and contemporaneous with the falsification, and is otherwise well-established by other testimony. Second, the record does not support an inference that the proffered reason did not actually motivate the employment action. The only record evidence suggesting a contrary inference was the statement

9

made by Kristen Frei, "this is not going to work." This statement, though, was patently ambiguous, especially in the context it was made (the arrangement of a work schedule). As such, it does not adequately support the inference to be drawn. *See Smith v. Firestone Tire & Rubber Co.*, 875 F. 2d 1325, 1330 (7th Cir. 1989).[4] Furthermore, if Frei were so concerned about finding a replacement nurse, then immediately firing an available nurse hardly would have served her purposes. Third, Plaintiff cannot show insufficient motivation on this record. Usually insufficient motivation is shown by evidence that other employees were not fired for substantially the same conduct. *Manzer*, 29 F.3d at 1084. In this case, there is no evidence that another employee did what DeVries did–neglect a liver and spleen palpitation and then falsify a form indicating that she completed the physical exam. This aspect of DeVries' job is so important for both liability purposes and the public health that any employer involved in this industry who did not terminate employees for such conduct would be rightly shut down by federal regulators for failing to adequately screen donors.[5] As such, pretext cannot be shown on the present record.

_____

[4]Plaintiff also relies on a similar statement by Mindy Buchard. However, this statement was made by a non-decision maker and is insufficient to show discriminatory intent. *Smith v. Leggettt Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000).

[5]While it might be argued that DeVries' failure was not likely to lead to contamination because of other safeguards, this argument assumes that the other persons performing those safeguards were also not checking a box as to work they did not perform. In other words, if a culture of noncompliance is tolerated, contamination is the likely end result. *See also* 21 C.F.R § 640.31 (establishing criteria for the suitability of plasma donors); Ross D. Eckert, The Blood-Transfusion Cases: A Legal and Economic Analysis of Liability, 29 San Diego L. Rev. 203, 204 -09 (1992) (discussing some 4,770 cases of HIV transmission caused by blood transfusion, the failure of blood testing to completely eliminate the risk, and the relative greater danger posed to blood recipients by hepatitis, an infection of the liver).

## <u>CONCLUSION</u>

For the reasons given, Defendant's Motion to Strike will be granted in part and denied in part, Defendant's Motion for Summary Judgment will be granted, and this action will be dismissed with prejudice.

Dated in Kalamazoo, MI:　　　　　　　　　　　/s/Richard Alan Enslen
September 19, 2006　　　　　　　　　　Richard Alan Enslen
　　　　　　　　　　　　　　　　Senior United States District Judge

11